The Honorable, the Judges of the United States Court of Appeal for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. That saved the United States and this Honorable Court. You may officially be seated. All right, we're prepared to hear argument in an initial case, United States v. Spencer. Ms. Pratt. Good morning, Your Honors. May it please the Court. After Todd Spencer won his first appeal, but before resentencing, the district court directed the probation officer to apply two new enhancements that made the guideline range even higher than before the appeal. Although the judge found he could not apply the enhancements as a legal matter, he still departed upward, without notice or sufficient factual basis, and imposed a sentence in the middle of that higher range. The judge also departed upward in part because, in the judge's own words, Mr. Spencer successfully appealed the prior sentence. The resulting sentence Well, those were his words, but it's a little bit out of context. It could be viewed as his simply noting that. It isn't apparent. The because is not, I didn't think, was entirely clear. It may be implicit in your view, but not explicit is what I'm trying to say. Okay. I have two responses, Judge Duncan. First, I think if the judge had said those words at the very outset of the sentencing, then there would be no indication that there was any potential sort of vindictiveness here. But he didn't say it at that point. He said it immediately before imposing sentence. And may I point to four factual things that I think give the context. First, the judge directed the probation officer to apply two new enhancements. That is not something that I have ever seen before. It's not something that any of my colleagues have seen before. Second, the fact that the application of those new enhancements resulted in an even higher range than had previously applied. Third, the judge lamenting that the enhancements had not previously been applied, even though he had earlier complimented the probation officer for doing a thorough job in preparing the pre-sentence report. Ms. Pratt, I take you are absolutely correct. My only point, which I think this just makes even clearer, is that the linkage is implicit rather than explicit. If it were explicit, you wouldn't have to go to the lengths that you are to put it in context. And I certainly recognize your argument. And I respect that. Judge Duncan, even if you would disagree that this is evidence of actual vindictiveness? But I wasn't suggesting that. All I was saying, and I thought that it was actually a factual statement, is that the linkage isn't explicit. You can certainly suggest that from context. Don't read too much into what I'm saying. I think what I'm saying was simply a factual observation. But I certainly take your point about the context and perhaps even the inadvisability of saying it. But it was nothing more than pointing out that I think the linkage is to be read from context rather than from the actual words. I'm not sure how much clearer the judge could be that. Well, he could have said I'm doing it. He could have used your phrase, I'm doing it because. And that's really my only point. And I don't want you to spend too much of your time on it because I certainly understand the thrust of what you're saying. Okay. Well, if I could just then finish up on this. Of course. That I think there is at a minimum, you know, when you put all these facts together. This is Judge Head. First of all, he could have been much clearer. I've had a case where the judge said because you appealed, I'm doing this. So he could have been much clearer and more explicit. But secondly, I'm kind of, I'm amazed that you seem to be making your argument, Ms. Pratt, on the turn of the use of a word. And the other example was you somehow, is your case really based on the fact that he complimented the probation officer for doing a thorough job? Do you not have stronger arguments in this case than that? Judge Shedley, the purpose of pointing out that fact is that if these enhancements that the judge tried to apply the second time, if there had been any basis for applying. No, I understand why you did it. Let me ask this question of you. Do you think the judge relied on facts that weren't in the record? It is very hard to know. Well, no, it's not hard to know. You know what the record is. You know what the record is. As to the facts that are in the record, I think he read far too much into them. That's what I mean. You know, when he talks about how maybe how upset the woman was and what her thoughts were and all that, do you think you have an argument that those are facts not in the record? Or do you think that just we should see that as a reasonable inference from what little she did say or what little was in the record? That's my question to you. If you don't want to make that argument, I'm not going to make you make it. I was just asking you. I would love to be able to suggest that this is a very small courthouse and information gets out. I cannot point to anything concrete that, for example, the judge had contact with the victim. I can't make that representation. But you just never know. So on the basis of the facts. I don't want to make you make an argument that you don't want to make. I was just asking that question. Is your argument based on the fact that he said he mentioned the appeal and he complimented the probation officer? That's your argument? It's the whole combination of what happened in this case. Those are two parts of it. And when you put all of the facts that I've mentioned in my brief that I've mentioned in the last couple of minutes, when you put all these facts together, I think that at least the appearance of vindictiveness becomes inescapable, and no one, especially not Mr. Spencer, can have any confidence that the new sentence was not selected, at least in part, for punishing him for winning his first appeal. And I just don't think this Court can condone what went on here. It completely undermines the integrity of the process. Well, let me ask this then. If the district court felt that the sentence itself, there's no reason that there's nothing technically to restrict what he does on remand, but if he feels that the sentence was correct for other reasons, would he not be free to reimpose the same sentence? He could as long as the sentence was both procedurally and substantively reasonable. Right. And so you recognize, I mean, he could do that. And it seems to me that from reading his words that he was doing his best to show that he would have otherwise upwardly departed because of his concern that the guideline range didn't adequately reflect the seriousness of the offense, even though he didn't use those words. He was trying to get to a defensible rationale for the ultimate sentence he imposed. Was he not? He was certainly trying to get back to something very close to his original sentence. Which he could do. As a general matter, yes. But then again, it still has to be procedurally. What takes this out of the general rule? I mean, we can't have a general rule saying that you cannot reimpose a similar sentence on remand through a different route. As long as the route is legally sound of its own right. That's correct, Judge Wilkinson, and I'm not trying to suggest that the judge cannot do it. But the judge was very careful to characterize what he did as a departure and certain procedural rules attached to departures. Except that, excuse me, he did check the boxes, as I recall, for a variance under the 3553A factors. Did he not? He filled out the part. The answer is yes. But. I know. I'm sorry. You're so unreasonable. The only thing I'm quibbling with is your characterization of it as clear. Because it seemed to me that it actually wasn't quite clear. In fact, perhaps to the extent that there's a problem here, it's the murkiness of what was done. Two answers. One, even though on the statement of reasons the judge did fill in the part of the form that relates to the 3553A factors, in the paragraph of narrative, he still characterizes it as a departure. Yes, he very much does. And if, I mean, he was very clear that he was departing. I mean, the government had asked. But you see, I'm perfectly comfortable with the first statement. I'm not perfectly comfortable with the very clear. Okay. Then if he's confused about the two, then I think that creates its own set of problems. Well, the line between a departure and a variance is somewhat hazy. But weren't you on notice from the first proceeding and thereafter that whether or not the enhancements were going to be applied, that the judge was concerned with the effect on the victim here. And the effect on the victim goes to two of the 3553A factors, which are the need for deterrence and the need for punishment. And weren't you thereby put on notice after the remand that this was the issue you were going to have to address? And what I'm concerned about is that we are going to be mired in a semantic distinction between departures and variances when the substance of the judge's concern was made known to all involved. At the first sentencing, Judge Wilkinson, yes, the judge had some concern for the victim. But the judge was also very specific that why he was giving the high end of the range was to give Mr. Spencer an opportunity for treatment. So there were multiple concerns at the first hearing. In its resentencing paper, the government certainly gave no indication that the victim was of any more concern than in the original hearing. And it's not until we get into the resentencing hearing that the judge puts much more emphasis, I think, on the victim than he did the first, even more emphasis than he did the first time. Did you make any argument then or do you have any argument now that the effect on the victim was other than what the government represents it to be? By that, in the statement of facts that was part of the plea agreement, all that is said about the victim is that she was disconcerted and afraid. I think that that is a far... It was more than that. She was locked in a room and she was told not to go out of the room. And she was locked in a room with white powder, which was easily confused with anthrax. She thought she'd been poisoned and perhaps fatally so. It's an incident that she's going to remember without question for the rest of her life. All those factors were in play, were they not? I think up to the point where you say that this is something she's going to remember for the rest of her life, that's where I think that there is not sufficient factual support. That is getting too far astray from being simply disconcerted and afraid. And the victim had an opportunity to... Why is that getting too far afield? It speaks directly to the 3553A factors. And a district judge can take into account all kinds of things during sentencing. It's a much looser kind of proceeding than trial. You are correct, Judge Wilkinson. What I'm trying to get at is that as a factual matter, it is a far cry from saying somebody is simply disconcerted and afraid to saying that this is something, without evidence from the victim herself, that this is going to affect her for the rest of her life. So you're saying it's substantively unreasonable. I'm saying that there's an insufficient factual basis for the leap of opinion or leap of inference that the judge made. Judge, do you have a question? This particular guideline, 2A6.1 or whatever, it's a bit of a unique guideline because it leaves district courts a great deal of flexibility in what they do. Because the circumstances surrounding the threats vary so dramatically. And so it doesn't have a classic departure framework, but most threats, I would suppose, don't carry a substance like dried toothpaste, which resemble a very lethal poison which had been much in the news. Most threats are delivered by email or letter, and it contains the threat itself, but it's not accompanied by poison. And so if you include, along with the threat, something that makes the threat seem all the more credible because it's accompanied by a substance that resembles anthrax, why wouldn't that, independently of the specific enhancements, provide a basis for a departure or a variance? And as I say, the line between the two is hazy under the best of circumstances, but here it seems even more so. I see I'm past my time, so if I could just try to make two or three very quick points before I sit down. First, the threats guideline does specifically contemplate application of the traditional departure provisions. The Commission acknowledges it's written to cover a lot of conduct and specifically recognizes that departures are a way to deal with that. Second, you are correct that there are very few cases involving powder such as this, but when you look at the sentences imposed in those cases, the sentence here is comparatively much greater than in those cases where there was arguably much worse conduct. So if I could reserve the remainder of my time, thank you. Thank you. Mr. Kirk? May it please the Court. I think it's important not to lose sight of what I think is the big picture of this case, which is this is a threat case where not all threats involve the threat of death, and not all threats of death even involve the powder that the recipient of the threat would get, believing that it had actually delivered the object of the threat upon receipt. And I think that the district court sentencing, both in the first case, first sentencing and the second sentencing, take into account that global view and the district court was fully entitled to do so. The sentence here was a reasonable one that was thoughtfully determined by an experienced district judge. Question for you. Do you think our review of this case over all these issues is plain error review or not? Well, I would take them individually. The notice, there was no objection to the notice issue, and so that would be plain error, clearly. You mean as to the departure or the variance? Correct. That would be plain error. Okay. Correct. And on that point, I would note that it's not clear to me what would look differently in a third sentencing in this case. First, let's just walk through the standard of plain error or not. Sure. So there was no objection as to the notice or departure versus variance point? You said you wanted to take them, each one of them separately is what you said. Right. Right. So there's the notice point. That, I think, is plain error. There's the district judge not applying a victim status enhancement and the disruption of the courthouse operations. I mean, there really isn't an objection to those, but there also, I mean, I guess you could say there is an objection, but the district judge said at the beginning of the sentencing, and that's Joint Appendix page 117, and then at the end, 134, both times, I'm not applying those provisions. And so to say that they were applied is in defiance of what the judge repeatedly said. No, I was thinking more in these terms. When it looks like, perhaps, the judge is talking about facts that aren't in the record. You're going to argue, I take it, you're going to argue that's a reasonable inference. But as to the judge, if the judge starts talking about facts that the other side, the defendant, thinks are not in the record, does that require an objection or not so? I would agree, and I think that, you know. No, you can't agree. You can't agree. I was asking the question. Okay. Does that require an objection at that point that, Your Honor, you're talking about facts that aren't in the record, so that for our purpose, we review that whole issue, plain error or otherwise? I'm asking you. I'm not giving you an answer. I'm asking you. Right. No, I think that plain error is certainly a way you can look at it, but I would go beyond plain error. I don't think this is just a forfeiture waiver type or a forfeiture in the traditional sense of plain error. I would go back to the first sentencing, and the first sentencing, remember, the way that unfolded was the sentencing was not initially going to occur on the day of the first sentencing. It was the judge was taking into account the defendant's request to have his counsel replaced, and then it turned, and from there it went to the judge accepted the plea, and from there the judge said, well, I'll go forward with the sentencing if everyone wants, and everyone agreed to that. And during that sentencing, the district judge said, quote, the individual receiving the threat is really in fear of their life. I don't think there's any question. And the defense counsel said, yes, sir. That's at appendix page 42. So that's really a case not where the defendant failed to object. That's a case where the defendant agrees, and it's a reasonable inference, too, from the statement of facts that there is this fear and, you know, very serious fear from the clerk. And so that's really a case where you have uncontested facts at a sentencing, and now we're having flyspecking about a point that really was never in serious dispute at either of the sentencings in this case. But that's often the case for plain error review is that it wasn't mentioned at all below. I don't want to be two ships passing in the night, but here's the point. As I remember the evidence, the evidence about the woman victim in the courthouse was she was disconcerted and afraid. And then when the judge talks about that, he says the person who received the letter was devastated, really devastated, and that is something that so often we forget. It goes on. When you get something like this letter, it's something one can't forget. One can't forget it. It's like war. You can't forget war. You can't forget what people do when they face the ultimate, which is death itself. I don't think it goes too far to say that that iteration of what she said goes beyond what the testimony was. And so I'm asking you about that, his iteration of that. Is that something, which he almost certainly took into account in sentencing, is that something that the other side has to object to when he takes her letter and expounds upon it in a way that can harm their client? I'm asking you that very specific question. Yes, you do have to object. And here, not only was there no objection, but the district judge said that the individual receiving a threat is really in fear of their life. And that's a quote. And the defense counsel responded to that, yes, sir. So that's not only not objecting, that's agreeing that those are the facts. No, not necessarily. Not necessarily. That just may be, yes, sir, I understand what you're saying. Y'all seem to be reading very, both sides reading very fine elements into the use of words. But to my point, and I'm going to let you go on to something else. But do you think that when the judge expounded on what hurt, as I remember, all the testimony was about this woman was she was disconcerted and afraid. He then elevated that to be devastated, like a victim of war. You never forget it. Do you think that iteration, that increase of the description, you think that would require, since it looks like it could possibly be adding facts, you think that would require an objection? And without an objection, in other words, Your Honor, we object to you using facts that aren't in this record. Absent that being done, you think we review his comments for plain error? I would agree with that. But I also think that, you know, it's important not to lose sight of the totality of the evidence that is clearly admitted by the defendant. You have a letter that is threatening death or injury. You have the defendant admitting that the powder was intended to cause the reader to fear that it was poison. And you have the victim who's locked in a room with the powder until it's tested. And then the victim is afraid. The defendant admits that. I just don't understand under what scenario it is in the case. It's your view that he didn't add facts to the record but drew reasonable inferences from the facts that were plainly in the record. Right. District courts characterize facts and they make statements and comments all the time. And if we're going to say, well, I mean, that's what they do during sentencing. Most of them explain their sentences. And some of those explanatory comments may seem to be exaggerations. But the point is that there was certain evidence in the record. We're reviewing this for abuse of discretion or plain error, but whatever the standard is, it's a deferential one. And what happened here was very serious and isn't the overall question whether the sentence was substantively unreasonable. I would agree with that. And I would say, I mean, who wouldn't, when you receive a letter that you believe contains poison and threatens death and you're afraid by it, have the inference that you have just been threatened with death? I mean, that's an inference that everyone would draw. Everybody in this room would be afraid and would fear for their lives. Could I address this holistically, as you seem to be? Would it be an unfair characterization to say that this sentencing proceeding was not a model of clarity? I would not contest that. In fact, there seem to be individual glitches. The confusion about whether this is a departure that requires notice or whether it's a variance. The district court perhaps, unfortunately, saying that it was taking all relevant factors into consideration and then including the fact that Spencer had successfully appealed the prior sentence. It is not the cleanest sentencing effort that I have seen. Should we be concerned about that totality and perhaps giving a district court an opportunity to clean up this record? I would say that, taken individually, none of these claims the defendant's raising warrant a resentencing. Individually and cumulatively, is what you're saying. I mean, I'll start with the vindictiveness claim. I mean, what the district judge said was, at the very end of the sentencing, quote, taking all of these factors into consideration and the fact that you have successfully appealed the prior sentence. The question is, what is the appropriate sentence here? And I would upperly depart. And I think that in context, the fairest reading of what the district judge did is he said throughout, I'm declining to apply this rejected enhancement, and then he imposes a lower sentence. And he also says I'm not applying. Well, not much lower. Not much lower, but that's a reflection of the guidelines or advisory. And the judge said, look, the main factor I'm concerned about here is one that is not directly taken into account in this guideline provision. And then this guideline provision itself acknowledges, look, we know that in dealing with threats, they're quite varied. This happens to be a threat that is a threat of death, and that is a threat that is accompanied by this powder. That's unusual, and I think the district judge wanted to, and it was entirely appropriate for him to take into account that special set of circumstances that makes this a much worse scenario than many other threat cases. But it's a question of whether this was, he went outside the record or not, or whether he drew reasonable inferences from what was in the record. That's correct. And the Clear Error Standard Review, as described by the Supreme Court in Bessemer City, says that district judges can draw inferences in making fact findings, and those are entitled to deference, even when it's based on a paper record. And here it would be drawing inferences from both the admissions and the facts for accompanying the guilty plea, and from the lack of any kind of objection to the court's characterization of those facts at the sentencing. Go through what the undisputed facts in the record were with respect to this threat. Well, so you have that it's undisputed that the letter threatens death or injury. The defendant admits that the powder was intended to cause the reader to fear that it was poison. The U.S. Marshals told the victim to lock herself in a room until the powder was tested, which shows that everyone was taking this very seriously, that it was poison, as it was intended to be taken, and the victim was disconcerted and afraid. I mean, to say that there was something missing from that recitation of the facts is really, I think, more like a florid prose requirement for, you know, a statement of facts for a guilty plea. I just don't see what's missing from it's a threat of death. It was intended to be as such. It caused the people to fear it, and they took steps in response. Why wouldn't they think that there's, you know, a real risk of death here? Although on our remand, we said he could not have intended, well, he knew it was dry toothpaste, so he was lacking the intent, and that was the basis of our remand. That is true, but that is, and that was, you know, a point clearly we're not disputing, but that is focused on the defendant's intent. The court is focused on what the victim was thinking, and so I view those as entirely. It's just the intent would need to come, it would seem to me, from the, intent would be inferred from the point of view of the person doing the action. I don't quarrel with your characterization of the facts at all about how it was received. Right, and he admits in the statement of facts, and that's Appendix 14 and 15, that he did intend that this would be viewed as poison. He didn't intend to cause death, but he intended to cause the effect on the victim. Right, and the district judge's concern, which I think is entirely appropriate, and in fact something that it would be nice if the commission would revise this guideline and take into account more directly is, and indeed this is, you know, part of the commission's role is to look at sentencings. I'm sorry. Let's talk about the government's role in this. You know, there's some question I think has been pointed out by sentencing. We're sort of talking about what the judge did and didn't do, and did he make an error here or there, but didn't the government help walk him into some of this confusion or problem by suggesting both a departure and a variance that they were seeking? That's true. The government said first we're asking for a variance on page 120, and then on 121 they said departure. Yeah, they said we're asking the court to depart, and then the next paragraph in the transcript they say we're asking for an upward variance. So, you know, we're in a situation where we talk about what the judge did, was the judge clear on what he did, but to be fair to the judge, the government kind of helped walk him into that situation, don't you think? I can't dispute that. But I would also emphasize for the court that as to this choice between departure and variance, as I understand this appeal, the only issue before us is whether there is a notice problem that flows from it. And as to that notice problem, there's no objection. It's plain error. Why do you think notice was given? Just because there was a continuing concern about the effect of the victim throughout the proceedings? Exactly. The court's concern has not changed throughout the first two sentences. One of the things that has concerned me is the appellate courts are encroaching upon the sentencing function and the sentencing discretion of district judges. And we've sliced and diced things so fine. And I'd like you to, I've indicated what I thought some of the dangers were in, were perhaps twofold here. Number one, district judges not being able to characterize facts in the record or draw inferences from undisputed facts in the record or make characterizations and landing down too hard on a district court's explanation. Because in Carter, we have, we say you're supposed to explain your sentence. All right, the district court explains. And then we say, no, you haven't explained it correctly. You've drawn unwarranted inferences. And so, you know, you get them going and coming. And then, so that is one thing that concerns me a good deal. And the other thing is, I'm not sure. I think this distinction between a departure and a variance is often a vague kind of thing. The terms sometimes seem to me to be used almost interchangeably. And the question at the bottom is, did you have notice of why the district court might not accept the guidelines, which are supposed to be advisory? And there was notice here. Everybody knew what was on the table and what was on the mind of the district court. But what do you think the dangers of over-appellate reach are if we were to remand the case a second time? Well, I agree with what Your Honor just said. And I don't think this is an area where the distinction between variance and departure makes much of a difference. And there isn't a – there's no limit on the district judge reaching the conclusions that it did substantively. The sentence here is a quite reasonable one. The court took into account a lot of factors like the defendant's mental health, his criminal record. And the inferences that the court drew from the admitted facts are perfectly reasonable ones. And the sentence is one that should be affirmed in that there is – I don't think there is a sufficient value added by a third sentencing in this case. If the court doesn't have any other questions, I'll ask that the judgment be affirmed and rest on my brief. Let me ask my colleagues if they have any further questions. Judge Shedd? I do not. Thank you. Thank you. Judge Duncan? No, thank you. Ms. Pratt, you have some time that you reserve for rebuttal. Thank you. Judge Shedd, to address your question about standard of review and objections, I have a two-part answer. First, as to the ultimate sentence imposed, we requested 27 months. That is sufficient to preserve an objection to the 45-month sentence that was imposed. As to notice specifically. And everything that composed it? In the context of this case, yes, I think so. Specifically as to the notice, the judge never said he was departing upward until immediately before imposing sentence. That is absolutely not permitted by Rule 32H. That requires advance notice. To give notice of a departure only at the time he's about to impose sentence makes any objection futile. And we couldn't have objected to a departure at that point. How do we know this is even a departure? I mean, does the guideline have a departure framework? Yes, Your Honor, it does. It does. Specifically has one. In application note, I think it's 4A to 2A 6.1. It talks about departures. And it specifically references Chapter 5 and 5K 2.0 and the departures laid out in the subsequent provisions there. So I think it's absolutely, I think it is very possible that the judge did intend a departure given that structure. And he was very deliberate. He said four different times he was departing. He said this is strictly a departure. He never said this was a variance. Does it matter? Well, he did say it was a variance in the statement. But does it matter if we find that clearly the defendant was on notice of the possibility? The judge was pretty consistent in its focus. It couldn't be characterized as an ambush, could it? You were not surprised. There could be no surprise with respect to what the court actually did. I was not there myself. To some degree, no. But I think to the extent, given that the guideline range had changed quite significantly, that the original sentence was at the top of the range and that nothing else had changed, there was no new information. Which simply goes back to my question earlier about the judge attempting to find an alternative basis to support a sentence it believed is correct, which it is free to do. It is, but it still has to be procedurally reasonable. And in this case, because there was insufficient factual support for the degree of the inferences or the assumptions, Judge Shedd, as you pointed out, the judge was making comments about how the victim was devastated and how this is like being at war. And that simply is not – Everyone living at home would be devastated by this kind of thing. I disagree, Judge Wilkinson. Okay, fine. But what I'm indicating, what I'm suggesting here is that it was clear all along that these guideline ranges are advisory. It was clear all along that the judge was uneasy with the guidelines. The judge didn't feel that the guideline range necessarily contemplated and took into account the seriousness of what was done here, which was that this was not just a threat, but it was a threat accompanied by a substance that resembled anthrax, which had been much in the news and which is a highly toxic and highly poisonous substance. It's not funny. And the judge felt that this was an unusual thing. It had a factual circumstance that was out of the ordinary. And if there was going to be a basis for departure, was it not clear to all in the courtroom that the basis would be the traumatic effect that it had upon this woman and that it was intended to have upon this woman? That was clear. The parameters of the sentencing proceeding were clear. The source of unease was clear on the part of the judge. Why he thought this was out of the ordinary, serious, and why it required the judge to think that the guidelines really here were advisory and didn't really reflect the actual real-world seriousness of the impact that this substance had upon this lady. Again, Your Honor, I believe that there is insufficient factual support for the degree of the sentence imposed. And we ask the court to vacate the sentence, to remand this case to a different judge who can now come to a closed record with a guideline range of 21 to 27 months, and we ask for another resentencing. Thank you. We thank you. We will come down and re-counsel and move into our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Allyson K. Duncan